**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA NOVELLINO, | Civil Action No.: 2:14-cv-01503 (CCC) |
| Plaintiff, | |
| v. | OPINION |
| MICHAEL J. ASTRUE COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**CECCHI, District Judge.**

## I. INTRODUCTION

Lisa Novellino ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits under the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This motion has been decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, the decision of the Administrative Law Judge (the "ALJ") is Affirmed.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed a Title II application for disability insurance benefits ("DIB") on June 17,

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

2010, alleging disability beginning July 31, 2000 (the "Onset Date"). (Administrative Record ("R.") 15, ECF No. 5). Plaintiff claimed that she was unable to work due to multiple sclerosis; bipolar disorder; depression; anxiety; and memory loss. (R. 65). The application was denied on October 3, 2010, and again upon reconsideration on May 24, 2011. (R. 65; 73). Thereafter, Plaintiff filed a written request for a hearing before an ALJ on July 18, 2011. (R. 76).

ALJ Norman R. Zamboni held a hearing in this matter on July 16, 2012. (R. 15). On August 14, 2012, ALJ Zamboni determined that Plaintiff was not disabled prior to June 30, 2006 (the "Date Last Insured") and denied Plaintiff's application. (R. 15-22; 141). On August 28, 2012, Plaintiff formally requested that the Appeals Council review the ALJ's decision. (R. 11). The Appeals Council denied Plaintiff's request on January 9, 2014. (R. 1). On March 8, 2014, Plaintiff timely filed the instant complaint (the "Complaint"). (Complaint of Lisa Novellino, filed March 8, 2014, ECF No. 1).

**B.     Personal and Employment Background**

Plaintiff is forty-four years old. (R. 137). On the Onset Date in 2000, Plaintiff was twenty-nine. (R. 137). In 1993, Plaintiff received a bachelor's degree from William Paterson University. (R. 36). Plaintiff is married and has no dependents. (R. 137-138).

During the ten years immediately preceding the Onset Date, Plaintiff had an average yearly income of $20,212.20. (R. 143). Plaintiff's last vocation prior to the Onset Date was "program coordinator," a job she held between 1998 and 1999. (R. 144-145; 149). Her average yearly income during those years was $31,959.27. (R. 144-145).

Plaintiff's employment as a program coordinator ended in 1999 when she voluntarily terminated her position to move to Colorado and become a veterinary technician. (R. 32-33). In 2000, Plaintiff stopped pursuing a veterinary technician license because she "realized that helping

children would be more meaningful than helping animals." (R. 33). Thereafter, Plaintiff moved to New Jersey to pursue her teaching license. (R. 32-33; 35).

From 2000 to 2003, Plaintiff had no reported income. (R. 143). From 2004 to 2006, Plaintiff worked as a substitute teacher once or twice a week. (R. 53). Plaintiff's incomes in 2004, 2005 and 2006 were $720.00, $5,260.00 and $2,707.50, respectively. (R. 143-145). During that period, Plaintiff testified that she attended graduate school once or twice a week for two summer semesters. (R. 55-56). In addition, medical progress notes dated July 2005, March 2006 and September 2006 indicate that Plaintiff was a graduate student at those times. (R. 420, 424, 426).

### C.     Medical Background

Plaintiff was diagnosed with multiple sclerosis on July 3, 2000. (R. 220). Thereafter, Plaintiff began treatment with Dr. James T. Shammas, a neurologist, and at the Multiple Sclerosis Center at Holy Name Hospital ("Holy Name"). (R. 36). During the period between the Onset Date of July 31, 2000 and the Date Last Insured of June 30, 2006 (the "Relevant Period"), Plaintiff also sought treatment for depression with Dr. Jeanette DeVaris, a psychologist. (R. 36).

#### 1.     Treatment at Holy Name | 2002-Present

Plaintiff began treatment at Holy Name in 2002. (R. 396). Medical progress notes indicate that treatment occurred biannually. (R. 396-424). The following information is taken from Plaintiff's progress notes: In Plaintiff's first session at Holy Name, in December 2002, Plaintiff's sole multiple sclerosis symptom was fatigue. (R. 399). She reported no difficulty with sitting, standing, walking, lifting, driving, housework, yardwork or dressing. (R. 400). She reported difficulty of 1 out of 4 (4 being 'most difficult') with jogging, stairs, memory and concentration. (R. 400). In June 2003, notes indicate that Plaintiff's condition improved. (R. 407). In a section titled "Incapacity Status" the examiner reported Plaintiff had fatigue of 1-2 and difficulty with stair

climbing, ambulation and transfers of 0-1. (R. 407). There is a margin notation of "?bipolar." (R. 407). The examiner also noted that Plaintiff voluntarily stopped taking her medication. (R. 407).

In December 2003, Plaintiff reported numbness on her left side, weakness in her left leg, arm pain while exercising, poor balance and blurred peripheral vision in her right eye. (R. 409). She reported that she had been taking two-mile walks and swimming three times per week, but was forced to stop due to her symptoms. (R. 409). The examiner also noted that Plaintiff consented to restart her medication. (R. 409).

In June 2004, Plaintiff's difficulty with stairs increased to a 2; however, she was no longer fatigued. (R. 416). In December 2004, Plaintiff's depression was "resolved," stairclimbing was rated 1-2 and fatigue was 0-1. (R. 418). Plaintiff reported that she was taking two-mile walks during the week and Tai Chi classes on Tuesdays. (R. 418).

In July 2005, Plaintiff's chief complaints were "allergies, numbness, [and] tightness [in the] lower back and l[eft] leg. (R. 420). The examiner noted no pain, difficulty with stairs of a 2, one episode of incontinence and left leg weakness after walking long distances. (R. 420). Plaintiff's fatigue and difficulty with mentation increased to 1-2. (R. 420). The examiner also noted that Plaintiff again stopped taking her medication. (R. 420).

In March 2006, Plaintiff's chief complaint was a cold. (R. 424). The examiner noted leg weakness but no pain. (R. 424). Plaintiff's difficulty with stairs remained a 2, while ambulation was 1-2. (R. 424). Difficulty with bladder function was rated 1-2. (R. 424). Plaintiff's psychological state was "fair" and her difficulty with vision was 0-1. (R. 424). Notes indicate that Plaintiff continued to "refus[e] medication." (R. 425). This was Plaintiff's last session at Holy Name prior to the Date Last Insured. (R. 424).

In September 2006, the first session after the Date Last Insured, Plaintiff's chief

complaints were reduced balance and stress. (R. 426). The examiner notes left leg weakness and cramping calves upon exertion. (R. 426). Plaintiff's difficulty with stairs and walking remained static, while her difficulty with bladder function increased to a 2. (R. 426). Plaintiff reported that she was continuing to attend Tai Chi classes. (R. 426). In addition, Plaintiff was "still" refusing medication, but "denie[d] depression." (R. 426-427).

### 2. Treatment with Dr. Shammas | 2002-2004

Plaintiff began treatment with Dr. Shammas in August 2002. (R. 238). The initial consultation notes state that Plaintiff had no active complaints except depression. (R. 238). They indicate that Plaintiff experienced symptoms of multiple sclerosis for three months following her diagnosis in 2000, but symptoms thereafter "resolved completely" other than occasional tingling in the hands. (R. 238). In January 2003, Plaintiff denied any new symptoms of multiple sclerosis other than occasional cramping of the right calf. (R. 230). In April 2003, Plaintiff stopped taking her medication because "she simply did not want to take it anymore" and while her left leg felt like a "rubber band" for a few days after cessation, the feeling resolved and she denied any new symptoms. (R. 229). In October 2003, Plaintiff complained of blurred vision and weakness in the left leg. (R. 227). Dr. Shammas noted difficulty with tandem gait. (R. 227). In January 2004, Plaintiff reported that her symptoms had improved and no new symptoms had developed. (R. 226). The January 2004 session was Plaintiff's last consultation with Dr. Shammas.

### 3. Treatment with Dr. DeVaris | 2002-Present

Plaintiff began treatment with Dr. Jeanette DeVaris, a psychologist, in February 2002. (R. 299). Longitudinal treatment records do not exist or were not included in the administrative record. Evidence of Plaintiff's treatment with Dr. DeVaris consists of a single "Medical Disorder Questionnaire Form" filled out by Dr. DeVaris in July 2010. (R. 295-299).

Dr. DeVaris observed the following: Plaintiff is groomed with good posture and unremarkable speech and mannerisms. (R. 295). Plaintiff has a slow and unsteady gait, with difficulty with daily living. (R. 295). In addition, Plaintiff "is too impaired to work in her chosen profession as a teacher." (R. 295). Plaintiff's ability to concentrate on household tasks, and her short and long-term memory are impaired, while her perceptions and thinking are within the normal range. (R. 296). Plaintiff has a history of depression and manic episodes with mood swings and emotional instability. (R. 297). Plaintiff "has excellent communication skills," "no difficulty understanding and following simple oral or written instructions" and "a strong motivation to be employed fully." (R. 297). However, the challenges of full-time employment are beyond Plaintiff's capability "due to a lack of energy." (R. 298). Dr. DeVaris concluded that Plaintiff has bipolar disorder, "her condition is not expected to improve" and "[h]er level of functioning is in steady decline." (R. 299).

The questionnaire does not contain any reference dates. Thus, because this inquiry only concerns Plaintiff's ability to work from 2000-2006, Dr. DeVaris's observations regarding the progression of Plaintiff's symptoms is limited.

### 4.     Plaintiff's Administrative Hearing

Plaintiff personally reports various symptoms stemming from her multiple sclerosis and depression, including trouble sleeping (R. 39), weight gain (R. 40), fatigue (R. 46), poor memory (R. 41), weakness in extremities (R. 44), drop foot in her left leg (R. 44) and lower-body numbness (R. 47). In addition, Plaintiff states that she is unable to lift anything and has trouble pushing shopping carts and vacuum cleaners. (R. 51-52).

Plaintiff reports being able to sit for twenty to thirty minutes before her leg falls asleep. (R. 50). Once the leg falls asleep, Plaintiff worries that it will remain that way permanently and

thus feels the need to stand. (R. 50). Plaintiff also testified that she is able to drive a vehicle and attend graduate school classes "less than 20 minutes" from her home. (R. 56).

### III.  LEGAL STANDARDS

#### A.  Standard Of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

#### B.  Determining Disability

Pursuant to the Social Security Act, to receive DIB, a claimant must satisfy the insured

status requirements of 42 U.S.C. § 423(c). In order to be eligible for benefits, a claimant must show that she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the claimant's physical or mental impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B). Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

The SSA follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the claimant has an impairment that limits her ability to work. Id. Third, if she has such an impairment, the ALJ considers the medical evidence

8

to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform her past relevant work. Id. Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform. Id.

The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 263 n. 2.

## IV. DISCUSSION

### A. The ALJ's Decision Is Supported By Substantial Evidence

After reviewing all of the evidence in the record, the ALJ denied Plaintiff's claim for benefits. (R. 417). The ALJ arrived at this determination by following the required five-step analysis. I now review the ALJ's decision for whether it is supported by substantial evidence at each step.

#### 1. Step One

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the Relevant Period. (R. 17). The Record indicates that Plaintiff was unemployed from the Onset Date in 2000 to 2003. (R. 143). From 2004 to the Date Last Insured in 2006, Plaintiff worked as a substitute teacher with an average yearly income $3,015.83. (R. 143-145). Such work

9

does not rise to the level of substantial gainful activity. 20 C.F.R. § 404.1571 *et seq.*; *see* Sykes, 228 F.3d at 262. Thus, the ALJ's step one finding is supported by substantial evidence.

### 2. Step Two

At step two, the ALJ must determine whether Plaintiff's impairment is "severe." An impairment or combination of impairments is "not severe if it does not significantly limit [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. However, where a claimant presents evidence that an impairment imposes "more than a slight abnormality" on the claimant's ability to perform work for twelve consecutive months, "the step-two requirement of severe is met, and the sequential evaluation process should continue." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003) (internal citation omitted). The ALJ found that Plaintiff had the following severe impairment: multiple sclerosis. (R. 17). The Record documents medically diagnosed multiple sclerosis, symptoms in accordance with that diagnosis and treatment for the entirety of the period of alleged disability. (R. 220; 238-226; 396-427). Thus, the ALJ's determination that Plaintiff's multiple sclerosis was severe during the Relevant Period is supported by substantial evidence.

The ALJ found that Plaintiff's deep-vein thrombosis ("DVT") was not a severe impairment. (R. 17). The Record demonstrates that Plaintiff was diagnosed with DVT in January 2004. (R. 434). Following several months of treatment, a Doppler Study performed in August 2004 revealed "[n]o evidence of deep vein thrombosis." (R. 342). In addition, according to a letter from the doctor treating Plaintiff's DVT to Dr. Shammas, dated August 26, 2004, "[Plaintiff's] deep venous thrombosis ha[d] completely resolved on the latest ultrasound screen." (R. 256). The period between January 2004 and August 2004 is less than one year and thus cannot meet the Commissioner's requirement that a severe impairment last for twelve months. *See* 20 C.F.R. §§

404.1520(a)(4)(ii) and 404.1509. Therefore, the ALJ's determination that Plaintiff's DVT was not severe is supported by substantial evidence.

Finally, the ALJ found that Plaintiff's mental impairments were not severe impairments. (R. 17). Plaintiff challenges the conclusion of the ALJ. (Brief on Behalf of Lisa Novellino 9, filed September 15, 2014, ECF No. 11). Plaintiff argues that there was "a substantial longitudinal record" of mental health treatment developed during the hearing before the ALJ and that Dr. DeVaris's questionnaire answers provided substantial evidence of severe mental impairments.[2] (Brief on Behalf of Lisa Novellino 9, ECF No. 11).

According to Plaintiff's testimony at the administrative hearing, Plaintiff received mental health treatment from 2002 through the Date Last Insured. (R. 37). During that period, she met with her psychologist (Dr. DeVaris) once a week. (R. 38). Plaintiff testified that she was depressed, did not want to do anything and suffered crying episodes. (R. 38). She further testified that her depression was offset by manic behavior, an emotional cycle symptomatic of bipolar disorder. (R. 59). Plaintiff also noted that she had trouble remembering appointments and "following through with things." (R. 41; 43).

The sole record of Plaintiff's treatment with Dr. DeVaris is the "Medical Disorder Questionnaire Form" dated July 24, 2010. (R. 295-299). The contents of the form are laid out in

---

[2] The Court notes that a questionnaire and hearing testimony devoid of dates is not a longitudinal treatment record. While the length of Plaintiff's treatment with Dr. DeVaris is evidence of a longstanding condition, the absence of records detailing the Plaintiff's symptoms and treatment makes it impossible to assess the degree of Plaintiff's impairments throughout the Relevant Period, as would not be the case with "a substantial longitudinal record." This finding is further confirmed by the opinion of two state agency psychological consultants who independently opined that there is insufficient evidence in the Record to establish a severe mental impairment. (R. 358; 503-515).

11

Plaintiff's medical background, *supra* II.C.3.

In addition to the hearing testimony and Dr. DeVaris's Questionnaire, the Court finds brief references to Plaintiff's mental health in the Holy Name treatment records. Progress notes from 2002 indicate that Plaintiff was depressed and had slight difficulty with memory and concentration. (R. 400-401). In 2003, Plaintiff was 0-1 out of 4 with regard to "Mood & Thought" and the notation "?bipolar" was handwritten. (R. 407). In June 2004, progress notes indicate that Plaintiff was a 0 on the "Mood & Thought" scale. (R. 416). In December 2004, the notation "depression resolved" was handwritten by the examiner. (R. 418). In 2005, Plaintiff was 0-1 for "Mood & Thought" and 1-2 for "Mentation." (R. 420). There is also a handwritten note that Plaintiff was taking antidepressants, but they "didn't help." (R. 420). In March 2006, progress notes indicate that Plaintiff's "Mood & Thought" was "fair" but "Mentation" was a 2. (R. 424). The first notes following the Date Last Insured state that "Mood & Thought" and "Mentation" were a 1 and a handwritten notation states that Plaintiff "denies depression." (R. 426).

The evidence of Plaintiff's mental impairments is insufficient to overrule the decision of the ALJ. The hearing testimony is "vague as to time periods and fail[s] to establish requisite severity." Martin v. Shalala, 927 F. Supp. 536, 541 (D.N.H. 1995). In addition, the medical record contains no evidence of significant mental impairments rising to the level of disabling. Treatment records indicate that while Plaintiff suffered depression, bipolar disorder and memory loss during the Relevant Period, the symptoms were rarely greater than 1 and never exceeded 2 on a scale of 1-4. The moderate impairment caused by Plaintiff's mental afflictions is supported by Dr. DeVaris's observation that while the Plaintiff "has a history of depression and manic episodes . . . she is not delusional . . . does not have hallucinations or paranoid ideation or mental confusion . . . does not withdraw emotionally [and] . . . does not exhibit catatonic disorganized behavior or

loosening of associations." (R. 297). Further, the Court notes Dr. DeVaris's response to question 6 ("Current Level of Functioning") that Plaintiff has the intellectual and emotional capacity to perform a job. (R. 298). Thus, the opinion of Plaintiff's psychologist supports the ALJ's conclusion that Plaintiff's mental impairments did not prevent Plaintiff from engaging in work.[3]

A "paucity of medical evidence" of a disabling mental impairment constitutes substantial evidence supporting an ALJ's decision. Martin, 927 F.Supp. at 541; see Barlow v. Comm'r of Soc. Sec., No. CIV.A. 13-538 JBS, 2014 WL 1225560, at *9 (D.N.J. Mar. 24, 2014) ("The ALJ 'is entitled to rely not only on what the record says, but also on what it does not say.'") (quoting Lane v. Comm'r of Soc. Sec., 100 F. App'x 90, 95 (3d Cir. 2004)). Here, there is a lack of evidence establishing severe psychiatric conditions coupled with the opinion of Plaintiff's psychologist that Plaintiff has the mental capacity to work. Therefore, the ALJ's determination that Plaintiff's mental impairments were not severe within the meaning of the Act is supported by substantial evidence.

### 3. Step Three

At step three, the ALJ determined that Plaintiff's multiple sclerosis did not meet or medically equal the requirements of any disability contained in the medical listing. (R. 411). Plaintiff does not challenge the ALJ's determination.

"For a claimant to show his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Jones v. Barnhart, 364 F.3d 501, 504 (3d Cir. 2004) (quoting Sullivan v. Zebley,

---

[3] The Court considers medical evidence sourced from a psychologist "for purposes of establishing intellectual disability, learning disabilities, and borderline intellectual functioning only[,]" as required by the Commissioner's Regulations. 20 C.F.R. § 404.1513.

13

493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

In coming to a step three determination, the ALJ properly determined that the claimant's multiple sclerosis during the Relevant Period did not meet the requirements of medical listing 11.09 (Multiple Sclerosis) and its subsections. (R. 18). The Record does not demonstrate that Plaintiff suffered "[s]ignificant and persistent disorganization of motor function in two extremities[,]" marked "[v]isual or mental impairment" or "[s]ignificant, reproducible fatigue of motor function with substantial muscle weakness" within the meaning of the Commissioner's Regulations.[4] 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Subsection 11.02(C). There is no indication that Plaintiff's symptoms progressed beyond a 2 out of 4 in terms of incapacity at any time during the Relevant Period. In addition, treatment records from Holy Name and Dr. Shammas indicate that Plaintiff's symptoms, when she suffered any, consisted predominantly of occasional numbness, difficulty with stairs, slight blurred vision and trouble with balance. Therefore, the ALJ's determination the Plaintiff's condition did not meet the relevant listing in step three is supported by substantial evidence

### 4. The ALJ's RFC Determination

Before step four, the ALJ determined that during the Relevant Period, Plaintiff had the RFC "for lifting and carrying up to ten pounds occasionally and five pounds frequently, standing and walking for up to two hours and sitting up six hours during the course of an eight hour day,

---

[4] Although an analysis of the aforementioned factors is not contained within the ALJ Decision's step three section, the ALJ plainly considers all of the records and symptoms relevant to this determination throughout the decision. Jones, 364 F.3d at 505 (an ALJ need not "adhere to a particular format . . . [provided the] decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that Jones did not meet the requirements for any listing).

and the full range of sedentary work as defined in 20 C.F.R. 404.1567(a)." (R. 18). The ALJ explicitly relied upon the Plaintiff's treatment history at Holy Name, the records of Dr. Shammus, the Plaintiff's testimony (of which he spent considerable space recounting in his decision) and Plaintiff's activities of daily living. (R. 21). Plaintiff challenges the ALJ's determination as not supported by substantial evidence. (Brief on Behalf of Lisa Novellino 15, ECF No. 11). Specifically, Plaintiff argues that the ALJ failed to account for all of Plaintiff's symptoms, especially after 2003.[5] (Brief on Behalf of Lisa Novellino 16-17, ECF No. 11).

Plaintiff identifies a "marked progression" in the symptoms of her multiple sclerosis beginning in December 2003. (Brief on Behalf of Lisa Novellino 16, ECF No. 11). However, the medical evidence in the Record does not support Plaintiff's characterization of her disease's progression. 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

Plaintiff's treatment records from Holy Name in June 2003 indicate that her condition was improving, but that she had voluntarily stopped taking her medication against the advice of her physician. (R. 407-408). Six months later, in December 2003, records from Holy Name and Dr.

---

[5] Plaintiff also argues that the ALJ erroneously considered that Plaintiff was a full-time graduate student during the Relevant Period. Plaintiff's argument is unavailing. Holy Name progress notes indicate that Plaintiff identified herself as a full-time graduate student in July 2005 and March 2006. (R. 420, 424). In addition, during the ALJ hearing, Plaintiff could not remember when she was a graduate student, except that she definitely attended classes in two summers once or twice a week. (R. 55-56). She also testified that she took classes at night while working as a substitute teacher, thus suggesting that she took classes during the school months of September through June as well. (R. 56). Regardless, as discussed in this section, Plaintiff's symptoms and activities of daily living support the ALJ's conclusion that the Plaintiff was able to engage in sedentary activity even if the Plaintiff's school attendance is discounted.

Shammas indicate that Plaintiff reported pain in arms during exercise, left-side numbness, left-leg weakness, poor balance and reduced vision. (R. 227, 409). The Holy Name examiner observed that her level of difficulty with stair climbing and ambulation was a 1 out of 4, vision was 1-2 and fatigue was 1-2. (R. 409). The progress notes also indicate that Plaintiff was not taking her medication, but that she consented to restart. (R. 409).

One month later, in December 2003, Dr. Shammas observed that Plaintiff "reported no new problems, and felt that she was getting better with physical therapy," although she did have "vague difficulty with vision." (R. 226). One year later, in December 2004, Holy Name progress notes indicate that Plaintiff reported she was "better" and had begun working. (R.418). Plaintiff did not report any pain, numbness or weakness, although she continued to have some difficulty with vision in her right eye. (R. 418). The examiner observed that her level of difficulty with ambulation was a 0, fatigue was 0-1 and stair climbing was 1-2. (R. 418). In addition, Plaintiff reported that she had begun taking 2 mile walks and attending Tai Chi classes on Tuesdays. (R. 418). Thus, the objective medical evidence does not support Plaintiff's contention that her symptoms markedly progressed after 2003. In addition, the Court notes that any perceived "progression" in Plaintiff's symptoms in 2003 coincided with Plaintiff's refusal to take her medication. (R. 418).

The Commissioner's Regulations define sedentary work as

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567. As thoroughly discussed in Plaintiff's medical background, *supra* II.C., Plaintiff's symptoms were stable throughout the Relevant Period, with only slight ebb and flow. Difficulty in all functions never exceeded 2 out of 4 in terms of incapacity, and medical progress

16

notes indicate that she was often almost asymptomatic. In fact, the final progress notes from the Relevant Period indicate that Plaintiff's chief complaint was a cold. (R. 424). At that time, she did not require personal assistance, appeared well-groomed and was diagnosed with "stable" multiple sclerosis. (R. 424-425). Her "progression" of symptoms in 2003 occurred briefly, resolved quickly and corresponded with Plaintiff's voluntary cessation of her medication, which her physician specifically counseled her against. (R. 226-227). In addition, at various times throughout the Relevant Period, Plaintiff was able to teach twice a week, attend graduate school twice a week, take two-mile walks, swim three times a week and take Tai Chi classes.

Therefore, having reviewed Plaintiff's medical background, the hearing testimony and the ALJ's decision, there was substantial evidence to support the ALJ's determination that the Plaintiff had the RFC to perform sedentary work.

### 5. Steps Four and Five

At steps four and five, the ALJ found that Plaintiff had the RFC during the Relevant Period to perform her past relevant work as a receptionist. (R. 21). Plaintiff does not challenge the ALJ's determination.

Past relevant work is substantial gainful activity performed within 15 years prior to the onset date and lasting long enough for Plaintiff to learn to how to perform the job. 20 C.F.R. § 416.960. Plaintiff's employment as a receptionist was within five years of the Onset Date in 2000 and lasted for three years, during which time she earned sufficient income to meet the Commissioner's standards for substantial gainful activity. 20 C.F.R. § 404.1574; (R. 144). Thus, Plaintiff's work as a receptionist qualifies as past relevant work.

The Dictionary of Occupational Titles, upon which we are directed to rely, identifies "Receptionist" as a sedentary job. 20 C.F.R. § 404.1569a; *see* Dictionary of Occupational Titles,

17

Receptionist (clerical), found at http://www.occupationalinfo.org/23/237367038.html. Therefore, because the ALJ properly found that Plaintiff had the RFC to perform sedentary work, the determination that Plaintiff could have worked at her past relevant work as a receptionist during the Relevant Period is supported by substantial evidence

## V.  CONCLUSION

For the foregoing reasons, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act between the Onset Date in 2000 and the Date Last Insured in 2006 is hereby AFFIRMED. An appropriate order accompanies this Opinion.

DATED: March 16, 2015

**CLAIRE C. CECCHI, U.S.D.J.**